UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stephen Roberts et al.,                                  Civil No. 12-2426 (SRN/FLN)

           Plaintiffs,

v.                                                       **REPORT AND RECOMMENDATION**

Ocwen Loan Servicing, LLC,

           Defendant.

_____

Carl Peterson and Erik Hansen for Plaintiffs.
David Mortensen for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 17, 2014 on the Defendant's amended motion to enforce settlement (ECF No. 36). The matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636. For the reasons set forth below, the Court recommends that the Defendant's motion be **GRANTED**.

**I. FINDINGS OF FACT**

Plaintiffs own real property located at 5418 Mayview Road, Minnetonka, Minnesota. Compl. ¶ 1, ECF No. 1-1. After falling behind on their mortgage payments, Plaintiffs entered into a Repayment Plan Agreement with Litton Loan Servicing (Litton) in May 2011. *Id.* ¶ 7–8. Plaintiffs made regular payments, according to the terms of the plan, through October 2011. *Id.* ¶ 11. At some point prior to November 2011, Defendant Ocwen Loan Servicing (Ocwen) purchased Litton, including the servicing rights to Plaintiff's mortgage. *Id.* ¶ 12. When Plaintiffs attempted to make their November 2011 payment under the repayment plan, Ocwen denied the payment, stating the loan had matured and all unpaid amounts were due. *Id.* ¶ 13.

Plaintiffs brought suit on September 20, 2012, alleging Ocwen breached the Repayment Plan

Agreement. *Id.* ¶ 14–22. On February 18, 2014, the parties attended a settlement conference with this Court. *See* Minute Entry, ECF No. 25. While a final agreement was not reached, significant progress was made and the parties left encouraged to resolve the issues on their own. The parties were instructed, however, to notify the Court if they were unable to achieve a settlement. On February 21, 2014, the parties informed the Court that they did not reach a final agreement, and a second settlement conference was scheduled for February 26, 2014. At the second conference, a settlement agreement was quickly reached, and the terms of the agreement were stated on the record. *See* Minute Entry, ECF No. 26. The parties agreed that:

- Plaintiffs will dismiss their claims against Ocwen with prejudice;
- Plaintiffs shall pay Ocwen $155,000 on or before July 17, 2014, in full satisfaction of the mortgage loan;
- If Plaintiffs fail to make such payment by July 17, 2014, Ocwen may proceed with a foreclosure of the mortgage;
- In the event that Ocwen is entitled to foreclose on the mortgage, Plaintiffs consent to the foreclosure and agree not to contest any foreclosure issues;
- If Ocwen forecloses on the mortgage, Plaintiffs agree to vacate the property at the end of the redemption period, and consent to an order of eviction if they do not voluntarily vacate;
- Plaintiffs will maintain all property taxes and insurance payments between February 2014 and the payoff date;
- Ocwen will take steps to correct or amend the credit line reporting for the mortgage loan account for the period of time during which the parties disputed the Repayment Plan Agreement (i.e., after November 2011).

Mortensen Aff. Ex. 1, ECF No. 38. All parties acknowledged that these terms comprised the entire agreement. *Id.*, Ex. 1 at 6. The parties also agreed to reduce the agreement to writing and file a stipulation of dismissal. *Id.*

On March 21, 2014, Ocwen emailed a draft of the settlement agreement to Plaintiffs for their signature. ECF No. 38, Ex. 2. After Ocwen sent two follow-up emails, Plaintiffs responded on May 7, indicating that they would promptly sign the agreement. *Id.*, Ex. 3. Rather than signing the

agreement, however, Plaintiffs sent Ocwen a revised settlement agreement on May 29. *Id.*, Ex. 4. On July 1, Plaintiffs emailed Ocwen seeking to add an express statement of the amount due on the mortgage loan to the settlement agreement. *Id.* ¶ 12. No other issues were addressed in the email. *Id.* Ocwen responded one week later, indicating it was not agreeable to adding the term. *Id.* On August 25, the parties had a phone conference where Plaintiffs proposed to modify the timing by which the parties had to perform their respective obligations under the agreement. *Id.* ¶ 14. Ocwen again opposed this modification. To date, the settlement agreement has not been reduced to writing, no stipulation for dismissal has been signed, and Plaintiffs have not made any payments to Ocwen.

On October 3, 2014, Ocwen brought the present motion, seeking an order from the Court enforcing the settlement agreement as originally reached by the parties on February 26, 2014. ECF No. 36. Ocwen argues that a full and final settlement was reached at the settlement conference and such settlement is binding on the parties. Def.'s Mem. in Supp. of Mot. to Enforce Settlement 4, ECF No. 37. Plaintiffs do not dispute the basic terms of the settlement agreement. They argue, however, that the parties intended Ocwen's obligation to correct or amend the credit line reporting for Plaintiffs' mortgage loan to serve as a condition precedent to Plaintiffs' performance under the agreement. *See generally* Pls.' Mem. in Opp'n to Def.'s Mot. to Enforce Settlement, ECF No. 40. Therefore, Plaintiffs assert that because Ocwen has not amended the credit reporting, Ocwen's motion should be denied. *Id.* at 3.

## II. DISCUSSION

### A.     Legal Standard

Under Minnesota law, it is well-established that oral settlement agreements are enforceable. *Schultz v. Dorel Juvenile Grp., Inc.*, No. 13-CV-558, 2014 WL 1260734, at *4 (D. Minn. Mar. 24,

3

2012); *Jallen v. Agre*, 119 N.W.2d 739, 742–43 (Minn. 1963) ("It is not essential to the enforcement of an agreement to settle a case that the agreement be in writing unless it is within the statute of frauds."). "Basic principles of contract formation govern the existence and enforcement [of an] alleged settlement." *Chaganti & Assocs. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (citing *Sheng v. Starkey Labs., Inc.*, 53 F.3d 192, 194 (8th Cir. 1995)). In order to constitute a full and enforceable settlement agreement, the parties must agree on all of the essential terms. *Transclean Corp. v. Motorvac Techs., Inc.*, No. 01-CV-287, 2002 WL 31185886, at *5 (D. Minn. Sept. 30, 2002) (citing *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971)). Because settlement agreements are favored in Minnesota, such agreements will not be lightly set aside by the courts. *Schultz*, 2014 WL 1260734, at *4 (citing *Johnson v. Sitzmann*, 413 N.W.2d 541, 545 (Minn. Ct. App. 1987)). Therefore, the party opposing enforcement of the settlement bears the burden of defeating the settlement agreement. *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971).

**B.    Analysis**

The present disagreement revolves around the timing of when Ocwen must take steps to correct or amend the credit line reporting for Plaintiffs' mortgage loan account pursuant to the agreement. *See generally* ECF No. 40. Plaintiffs assert that the parties intended for this obligation to serve as a condition precedent to Plaintiffs' performance under the agreement. ECF No. 40, at 1. At the hearing, Plaintiffs indicated that their credit score is too low to secure the financing needed to make the $155,000 payment to satisfy the mortgage loan under the settlement agreement. Thus, Plaintiffs claim that the parties agreed to the credit amending provision based on the understanding that Plaintiffs would not be able to obtain proper financing unless the negative marks were removed from their credit report. *Id.* at 1–2. Therefore, Plaintiffs argue they are not obligated to perform

under the agreement unless and until Ocwen amends the credit reporting on Plaintiffs' account. *Id.* at 3. The Court disagrees and finds that Ocwen's obligations under the settlement agreement were not a condition precedent to Plaintiffs' performance.

"An intention to make a duty conditional may be manifested by the general nature of the agreement, as well as by specific language." *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1436 (8th Cir. 1995) (quoting *Seman v. First State Bank of Eden Prairie*, 394 N.W.2d 557, 560 (Minn. Ct. App. 1986)); *see also Rosenbloom v. Gen. Nutrition Ctr., Inc.*, No. 09-CV-1582, 2010 WL 1050297, at *2 (D. Minn. Mar. 18, 2010) ("Intent to contract is based upon the objective manifestations of the parties and not upon subjective but unmanifested intent."). Where the language used in a contract is clear and unambiguous, however, there is no opportunity for interpretation or construction. *Id.* (citing *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 215 N.W.2d 473, 476 (Minn. 1974)). "Therefore, a court should determine the meaning of the contract in accordance with its plainly expressed intent and not what was intended to be written." *Id.*

Plaintiffs have not provided this Court with any evidence to support their contention that the parties intended Ocwen's repair of Plaintiffs' credit history to be a condition precedent. Plaintiffs' brief in opposition to Ocwen's motion merely contains conclusory statements regarding the parties' understanding of the agreement's terms. *See generally* ECF No. 40. Apart from these statements, nothing in the record indicates that the parties intended anything other than the terms stated at the settlement conference.

Moreover, when the settlement agreement was placed on the record with the Court, neither party made any indication that Ocwen's obligations to amend the credit reporting served as a

5

condition precedent. Specifically, the only statements made regarding this issue were as follows:

> [Ocwen's counsel]: [T]he parties have also agreed that Ocwen will take steps to correct or amend the credit line reporting for the account specifically for the period of time involving the work-out—the work-out plan and after or to the present date. We've discussed that there's not much we can do if the reporting is accurate as to the payments or the reporting prior to the date of the work-out plan in 2011. There's no guarantee how that will—how the bureaus will read that, but my understanding is that when that report is made, it does act somewhat—or does act favorably for the borrower on that loan.

ECF No. 38, Ex. 1, at 4.

After Ocwen's counsel stated his understanding of the entire agreement, the Court asked Plaintiffs' counsel if the terms as stated by Ocwen were correct. Plaintiffs' counsel responded, "That is my understanding of what the agreement is." *Id.* at 6. The Court then asked Plaintiff Stephen Roberts, who was present at the conference, the same question. Roberts replied, "Yes, Your Honor, that is my understanding of the agreement." *Id.* Therefore, both Roberts and his counsel each had the opportunity to add to or clarify any of the stated terms on the record. Despite this opportunity, Plaintiffs never indicated that Ocwen's obligation to amend the credit reporting was a condition precedent to Plaintiffs' performance under the settlement agreement. Nor did Plaintiffs state that such amendment of their credit report was necessary in order for them to obtain the proper financing to pay off the mortgage loan. The first time Plaintiffs raised this issue was in their brief in opposition to Ocwen's motion to enforce the settlement. *See* ECF No. 40. If Plaintiffs were concerned that they would be unable to obtain financing due to their credit score, they should have raised this issue during the settlement conference.

While Ocwen is required to take steps to amend Plaintiffs' credit history, the Court finds that

this obligation is not a condition precedent to Plaintiffs' performance under the settlement agreement.[1] *See Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) ("If a contract is unambiguous, the contract language must be given its plain and ordinary meaning . . . ."). Because the essential terms of the agreement were mutually agreed to by both parties at the settlement conference, the Court finds that an enforceable agreement exists and rejects Plaintiffs' argument that such agreement should not be enforced.

### III. CONCLUSION

A valid and enforceable settlement agreement exists between the parties. The binding agreement was formed on February 26, 2014, and consists of the following material terms: (1) Plaintiffs agree to dismiss their claims against Ocwen with prejudice; (2) Plaintiffs agree to pay Ocwen $155,000 on or before July 17, 2014, in full satisfaction of the mortgage loan; (3) if Plaintiffs fail to make such payment by July 17, 2014, Ocwen is entitled to proceed with the foreclosure on the mortgage loan; (4) if Ocwen forecloses due to Plaintiffs' failure to make the $155,000 payment, Plaintiffs consent to the foreclosure, agree to not contest the issues, agree to vacate the property at the end of the redemption period, and consent to an order of eviction in the event they do not voluntarily vacate by the expiration of the redemption period; (5) Plaintiffs agree to maintain the property taxes and insurance payments on the property from February to July 2014; (6) Ocwen agrees to take steps to correct or amend the credit line reporting for Plaintiffs' mortgage account for the period of time during which the parties disputed the Repayment Plan Agreement. These terms control the parties' obligations under the agreement. Thus, because Plaintiffs did not make the

---

[1] The Court notes, however, that it is in Ocwen's best interest to amend the credit reporting as quickly as possible as it will assist in Plaintiffs' ability to pay off the mortgage loan.

$155,000 payment by the July 17, 2014 deadline, Ocwen is entitled to proceed with foreclosure proceedings on the property at issue. Pursuant to the agreement, Plaintiffs may not contest the foreclosure and must vacate the premises at the end of the redemption period.

### III. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's motion to enforce the settlement agreement be **GRANTED** to the extent set forth herein and Plaintiffs' claims be **DISMISSED WITH PREJUDICE.**


DATED: November 18, 2014                              *s/Franklin L. Noel*
                                                     FRANKLIN L. NOEL
                                                     United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 2, 2014**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **December 2, 2014** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.